10-4785-cv
*Wyly v. Weiss*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: January 26, 2012                    Decided: October 10, 2012)

Docket No. 10-4785-cv

SAM WYLY, and other Wyly Appellants, WYLY APPELLANTS,

*Respondents-Appellants,*

STEVEN SINSHEIMER, on behalf of himself and all others similarly situated,
FELIX GLAUBACH, on behalf of himself and all others similarly situated,
JERRY WEHMHOEFER, on behalf of himself and all others similarly situated,
MISHEL S. TEHRANI, on behalf of himself and all others similarly situated,
JOHN J. GRECO, on behalf of himself and all others similarly situated,
LILLIAN HERSCHKOWITZ, BRUCE MONTAGUE,

*Appellants,*

v.

MELVYN I. WEISS, MILBERG WEISS LLP, LEE A. WEISS,
BARRY A. WEPRIN, GEORGE A. BAUER, III, JULES BRODY,
SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP,
RICHARD SCHIFFRIN, ANDREW BARROWAY,
STULL, STULL & BRODY, ANDREW L. BARROWAY,
on behalf of himself and all others similarly situated,

*Movants-Appellees,*

COMPUTER ASSOCIATES INTERNATIONAL, INC.,
CHARLES B. WANG, SANJAY KUMAR, RUSSELL M. ARTZT,
IRA H. ZAR, ALFONSE M. D'AMATO, JAY W. LORSCH,
LEWIS S. RANIERI, WALTER P. SCHUETZE, SEYMORE PIENKNY,
SPECIAL LITIGATION COMMITTEE OF THE BOARD OF DIRECTORS
OF COMPUTER ASSOCIATES INTERNATIONAL, INC.,

*Appellees.*[1]

---

[1] The Clerk of Court is directed to amend the caption of this case to conform to the listing of the parties shown above.

1

Before: KEARSE, CABRANES, and SACK, *Circuit Judges.*

Appeal from the November 3, 2010 judgment of the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge*), enjoining the movants-appellants from prosecuting *Wyly v. Milberg Weiss LLP*, No. 07/603883 (N.Y. Sup. Ct.), an action for malpractice and breach of fiduciary duty in the Supreme Court of New York, and directing them to discontinue that action with prejudice. In this action under the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283, we consider whether, following the approval of a federal class action settlement, the District Court properly enjoined a state court action for legal malpractice directed at counsel for the plaintiff class. We hold that the "in aid of jurisdiction" exception to the Anti-Injunction Act cannot form the basis for the District Court's injunction of the state court action, as the limited circumstances in which the injunction of an *in personam* action may be appropriate "in aid of" the court's jurisdiction are not present in this case. On an issue of first impression, we consider whether the award of "fair and reasonable" attorneys' fees precludes a subsequent malpractice action under the "relitigation" exception to the Anti-Injunction Act. We conclude that where, as here, the parties had a full and fair opportunity to litigate the reasonableness of counsel's representation, a subsequent malpractice action may be enjoined under the relitigation exception.

Affirmed.

WILLIAM A. BREWER (Alexander D. Widell, *on the brief*), Bickel & Brewer, New York, NY, *for Respondents-Appellants.*

GREGORY P. JOSEPH (Douglas J. Pepe and Jeffrey H. Zaiger, *on the brief*), Gregory P. Joseph Law Offices LLC, New York, NY; (Philip R. Forlenza and Benjamin S. Litman, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, NY; (Eric R. Levine, *on the brief*), Eiseman Levine Lehrhaupt & Kakoyiannis, P.C., New York, NY; (Robert J. Pariser, *on the brief*), Wilson Elser

2

Moskowitz Edelman & Dicker LLP, New York, NY, *for Movants-Appellees*.

JOSÉ A. CABRANES, *Circuit Judge*:

In this action under the All Writs Act, 28 U.S.C. § 1651,[2] and the Anti-Injunction Act, 28 U.S.C. § 2283,[3] we consider whether, following the approval of a federal class action settlement, the District Court properly enjoined a state court action for legal malpractice directed at counsel for the plaintiff class for advocating the settlement. We hold that the "in aid of jurisdiction" exception to the Anti-Injunction Act cannot form the basis for the District Court's injunction of the state court action, as the limited circumstances in which the injunction of an *in personam* action may be appropriate "in aid of" the court's jurisdiction are not present in this case. On an issue of first impression, we consider whether the award of "fair and reasonable" attorneys' fees precludes a subsequent malpractice action under the "relitigation" exception to the Anti-Injunction Act. We conclude that where, as here, the parties had a full and fair opportunity to litigate the reasonableness of counsel's representation, a subsequent malpractice action may be enjoined under the relitigation exception. We therefore affirm the judgment of the District Court.

---

[2] 28 U.S.C. § 1651 provides as follows:

> (a)    The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
>
> (b)    An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

[3] 28 U.S.C. § 2283 provides as follows:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

## BACKGROUND

### A. Factual Background

#### 1. The 1998 and 2002 Class Actions

Beginning in July 1998, eleven putative class action complaints were filed in the United States District Court for the Eastern District of New York against Computer Associates International, Inc. ("Computer Associates" or "CA") and certain of its then-current and former officers and directors, alleging violations of the federal securities laws and Generally Accepted Accounting Principles ("GAAP").[4] By Order dated October 9, 1998, the District Court consolidated those complaints into a single action, *In re Computer Assocs. Class Action Sec. Litig.*, No. 98-cv-4839 (TCP) (E.D.N.Y.) (the "1998 Class Action"), and appointed the law firms of Milberg Weiss LLP and Stull, Stull & Brody as co-lead counsel for the class. The plaintiffs in the 1998 Class Action alleged that officers and directors of Computer Associates participated in a scheme to artificially inflate the price of CA stock, artificially inflate its reported revenues, and conceal the deterioration of its business. The class period in the 1998 Class Action spanned approximately six months, from January 20, 1998 through July 22, 1998.

Between February and May 2002, thirteen additional putative class action complaints were filed against Computer Associates and certain of its then-current and former officers and directors, again alleging violations of the federal securities laws and GAAP. By Order dated July 25, 2002, the cases were consolidated into a single action, *In re Computer Assocs. 2002 Class Action Sec. Litig.*, No. 02-cv-1226 (TCP) (E.D.N.Y.) (the "2002 Class Action"), and Milberg Weiss LLP and Schiffrin &

---

[4] "GAAP are those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time. They are established by the American Institute of Certified Public Accountants." *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 153 n.5 (2d Cir. 2012) (internal citation, quotation marks, and alterations omitted).

Barroway, LLP were appointed co-lead counsel for the class.[5] The class period in the 2002 Class Action spanned approximately two years and nine months, from May 28, 1999 through February 25, 2002. In connection with the 2002 Class Action, class counsel decided not to conduct any discovery and instead elected to rely exclusively on the discovery conducted in the 1998 Class Action.

## 2. The Government Investigation

In February 2002, the United States Attorney's Office for the Eastern District of New York. and the Securities & Exchange Commission (jointly, the "Government") launched a joint investigation into CA's accounting practices. In July 2003, CA's defense counsel in the Government investigation, Wachtell, Lipton, Rosen & Katz ("WLRK"), informed the CA Board of Directors (the "CA Board" or the "Board") that up to $200 million of revenue was prematurely or improperly recognized in one quarter of fiscal year 2000 alone. WLRK further informed the Board that anything less than an independent internal investigation would be viewed by the Government as non-cooperation. As a result, the CA Board authorized its Special Litigation Committee ("SLC") to conduct an internal investigation. The SLC then retained Sullivan & Cromwell LLP to assist in that investigation.

## 3. The Class Action Settlement

In early 2003, with the trial of the 1998 Class Action approaching and at the direction of the District Court, the parties entered into mediation. In August 2003, following approximately seven months of mediation, the parties reached a global settlement of the 1998 and 2002 Class Actions by which the class members were to receive 5.7 million shares of CA common stock, valued at

---

[5] As noted below, we refer to Melvyn I. Weiss, Milberg Weiss LLP, Lee A. Weiss, Barry A. Weprin, George A. Bauer, III, Jules Brody, Schiffrin Barroway Topaz & Kessler LLP, Richard Schiffrin, Andrew Barroway, Stull, Stull & Brody, and Andrew L. Barroway jointly as "class counsel."

approximately $130 to 150 million at the time of the settlement.[6] As its fee, class counsel would receive approximately 1.4 million shares of CA common stock, valued at approximately $30 to 40 million. In return, CA and its officers and directors were to receive broad-based liability releases.

On December 5, 2003, the District Court conducted a fairness hearing on the projected global settlement, as required by Federal Rule of Civil Procedure 23(e)(2). No class member objected to the settlement.[7] At the fairness hearing, class counsel stated that:

> As we all are aware, there is a criminal investigation [of CA] that is ongoing, and I just wanted the Court to understand, as we have stated in our papers, that we've [taken] all of that into account in coming to the conclusions we did as to what would be a fair, reasonable and adequate settlement for the class members.

Joint App'x 1: 270 at 5:5–5:10. On December 8, 2003, the District Court certified a single class encompassing the 1998 Class Action and the 2002 Class Action and approved the settlement. On December 16, 2003, the District Court issued an Amended Order and Final Judgment (the "Settlement Order"), which (1) held that the settlement was "fair, reasonable[,] and adequate," (2) awarded class counsel fees, which the Court held to be "fair and reasonable," and (3) retained exclusive jurisdiction "over the parties and the Settlement Class Members for all matters relating to the[se] Actions."

### 4. Subsequent Discoveries

Within months of the District Court's approval of the global settlement, several CA executives pleaded guilty to federal securities violations and obstruction of justice. On April 26, 2004, Computer Associates announced that it was restating more than $2.2 billion in revenue. On

---

[6] The Government investigation ultimately resulted in payment of an additional $225 million in restitution to CA shareholders, as well as other structural and non-monetary relief.

[7] Two members of the class, neither of whom are parties to this action, initially objected but withdrew their objections in advance of the fairness hearing.

September 22, 2004, CA's general counsel, Steven Woghin, pleaded guilty to conspiracy to commit securities fraud and obstruction of justice, and CA entered into a Deferred Prosecution Agreement ("DPA") in order to avoid criminal prosecution. In the DPA, CA admitted that many of its senior executives participated in a multi-billion dollar accounting fraud and cover-up.

On September 24, 2004, the *Wall Street Journal* reported that CA had improperly withheld 23 boxes of documents (the "23 boxes") during the class actions and the Government investigation. *See* Charles Forelle & Joann S. Lublin, *In CA Probe: Recovered E-mails, Surprise Cache of Documents*, The Wall St. J., Sept. 24, 2004, at A1. Although the 23 boxes were not produced during discovery in the class actions, CA had turned over the 23 boxes to Sullivan & Cromwell in connection with the internal investigation in September 2003—prior to the approval of the global settlement.

### 5. The Rule 60(b) Motion

In light of the foregoing developments, Sam Wyly and other members of the Settlement Class (jointly, the "Wyly Appellants") contacted class counsel on October 18, 2004, and requested that they move to vacate the Settlement Order pursuant to Federal Rule of Civil Procedure 60(b).[8]

---

[8] Federal Rule of Civil Procedure 60(b) provides as follows:

*Grounds for Relief from a Final Judgment, Order, or Proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

On November 24, 2004, class counsel declined. On December 7, 2004, the Wyly Appellants moved for relief from the Settlement Order under Rule 60(b).

Nearly three years of discovery and motion practice followed. During that time, the District Court ordered that the 23 boxes be produced to counsel for the Wyly Appellants for their review. Although the Wyly Appellants continue to attach great significance to the 23 boxes on appeal, the U.S. Attorney's Office and the SLC stressed to the District Court that "the 23 boxes . . . rendered *no* additional evidence of fraud beyond that which [the Wyly Appellants] already had." Joint App'x 4: 902 (SLC Report) (internal quotation marks omitted).

At a discovery conference on August 1, 2007, the District Court dismissed the Rule 60(b) motion *sua sponte*. The next day, the District Court entered an order memorializing its ruling (the "Rule 60(b) Order"), holding that "the moving parties have failed to set forth cause to permit further discovery to be conducted in conjunction with the 60(b) motions." *In re Computer Assocs.*, 2007 WL 2261683, at *1 (E.D.N.Y. Aug. 2, 2007). Specifically, the District Court concluded that "in the three years since the filing of the original 60(b) motions in 2004, the parties have failed to produce any 'new' evidence of fraud upon th[e] Court . . . and have failed to establish that the contents of the '23 boxes' allegedly withheld during discovery . . . warrant granting further discovery and reopening the 2003 settlement." *Id.*, 2007 WL 2261683 at *2. The Wyly Appellants appealed, and on July 23, 2009, we affirmed the District Court's order on procedural grounds. *See Federman v. Artzt*, 339 F. App'x 31, 33–34 (2d Cir. 2009).

**B. Procedural History**

The Wyly Appellants filed an initial complaint in the Supreme Court of New York on November 26, 2007, and an amended complaint on December 11, 2007, alleging that class counsel placed its own financial interests before those of the class. The amended complaint, captioned *Wyly v.*

8

*Milberg Weiss LLP*, No. 07/603883 (N.Y. Sup. Ct.), asserted claims for, *inter alia*, breach of fiduciary duty, legal malpractice, unjust enrichment, and fraud.

On January 2, 2008, the movants-appellees—Melvyn I. Weiss, Milberg Weiss LLP, Lee A. Weiss, Barry A. Weprin, George A. Bauer, III, Jules Brody, Schiffrin Barroway Topaz & Kessler LLP, Richard Schiffrin, Andrew Barroway, Stull, Stull & Brody, and Andrew L. Barroway (jointly, the "Appellees" or "class counsel")—moved in the District Court for an order permanently enjoining the Wyly Appellants from prosecuting the state court action. The Appellees argued that the District Court's holdings at the fairness hearing, its approval of the global settlement, and its dismissal of the Rule 60(b) motion permitted the issuance of an injunction under the All Writs Act, 28 U.S.C. § 1651, barring the state court proceedings against class counsel.

On September 29, 2010, the District Court granted the injunction and directed class counsel to submit a proposed order. The District Court entered the proposed order on November 3, 2010, holding, *inter alia*, that "this Court's determination of Class Counsel's entitlement to fees necessarily determined the adequacy of their representation of the class members (including Wyly) and collaterally estops claims of attorney malpractice or misconduct in connection with the Settlement." *Barroway v. Computer Assocs.*, No. 98-cv-4839 (TCP) (ETB) (E.D.N.Y. Nov. 3, 2010), Doc. No. 402. The District Court further held that the state court action "seeks to relitigate and nullify [its] findings as to the adequacy of [class counsel's] representation of the plaintiff class," as reflected in the Settlement Order and the Rule 60(b) Order. *Id.*

This appeal followed.

## DISCUSSION

The sole issue on appeal is whether the District Court's injunction against the state court action was proper under the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283.

9

The All Writs Act, 28 U.S.C. § 1651, authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* § 1651(a). "This grant of authority is limited by the Anti-Injunction Act, 28 U.S.C. § 2283, which bars a federal court from enjoining a proceeding in state court unless that action is 'expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004) (quoting 28 U.S.C. § 2283). In interpreting the Anti-Injunction Act, the Supreme Court has directed that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

In this case, the District Court held that a permanent injunction of the state court action was "necessary in aid of its jurisdiction" (the "in aid of jurisdiction" exception) and was needed to "protect or effectuate its judgments" (the "relitigation" exception). 28 U.S.C. § 2283. We consider each of these holdings in turn. In doing so, we review the District Court's issuance of an injunction for abuse of discretion. *Ret. Sys. of Ala.*, 386 F.3d at 425. We review the District Court's factual findings for clear error and its interpretation of the All Writs Act and the Anti-Injunction Act *de novo*. *Id.*; *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that the term of art "abuse of discretion" includes errors of law).

### A. The "In Aid Of Jurisdiction" Exception

Under the Anti-Injunction Act, the "in aid of jurisdiction" exception applies "where the effect of [a state court proceeding] would be to defeat or impair the jurisdiction of the federal court." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922). The exception is generally reserved for state court actions *in rem*, because the state court's exercise of jurisdiction "necessarily impairs, and may defeat," the

10

federal court's jurisdiction over the *res*. *Id.* By contrast, "an *in personam* action involves a controversy over liability rather than over possession of a thing." *Ret Sys. of Ala.*, 386 F.3d at 426. For that reason, an *in personam* action generally "'does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending.'" *Id.* (quoting *Kline*, 260 U.S. at 230).

The Supreme Court has never held that a district court may enjoin a parallel *in personam* action under the "in aid of jurisdiction" exception. *Id.* (citing *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) ("We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court.")). We have recognized, however, that an *in personam* injunction may be appropriate under certain limited circumstances. *Id.* In *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), we held that an injunction was appropriate where "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control." *Id.* at 337 (italics added). But, as we have explained in detail, *see Ret Sys. of Ala.*, 386 F.3d at 426–28, *Baldwin-United* involved a multidistrict federal securities class action on the verge of settlement. Indeed, by the time the State of New York gave notice of its intent to file a state court action, eighteen of the twenty-six defendants had already signed stipulations of settlement, which the district court had preliminarily approved. *Baldwin-United*, 770 F.2d at 332–33. On those facts, we affirmed the district court's grant of an *in personam* injunction, reasoning as follows:

> The existence of multiple and harassing actions by the states could only serve to frustrate the district court's efforts to craft a settlement in the multidistrict litigation before it. The success of any federal settlement was dependent on the parties' ability to agree to the release of any and all related civil claims the plaintiffs had against the settling defendants based on the same facts. If states or others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any federal settlement. *Any substantial risk of this prospect would threaten all of the settlement efforts by the district court and destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims.*

*Id.* at 337 (emphasis supplied).

11

We have since cautioned that "[c]learly, our decision in *Baldwin-United* did not create a blanket rule or presumption that a federal court in any multidistrict action may enjoin parallel state proceedings." *Ret Sys. of Ala.*, 386 F.3d at 427–28. Rather, it was "crucial to our analysis" in *Baldwin-United* that "most of the defendants had already settled, and that there was a 'substantially significant prospect that the other eight defendants [would] settle in the reasonably near future.'" *Id.* at 428 (brackets omitted) (quoting *Baldwin-United*, 770 F.2d at 338). We explicitly noted that if "it should appear that prompt settlement was no longer likely, . . . the situation would fall within the [*Kline*] rule that *in personam* proceedings in state court cannot be enjoined merely because they are duplicative of actions being heard in federal court." *Baldwin-United*, 770 F.2d at 338.

In this case, the District Court summarily invoked the "in aid of jurisdiction" exception but made no mention of the *in personam* nature of the injunction. On appeal, the Wyly Appellants argue that the "in aid of jurisdiction" exception does not apply, and that *Baldwin-United* is inapposite, because the state court action "does not seek to frustrate, nullify or in any way undermine the 2003 Settlement." Appellants' Br. 27. Indeed, none of the claims in the state court action are duplicative of the claims in the federal class actions, and none of the defendants in the state court action were defendants in the federal class actions. The parties do not dispute that if the Wyly Appellants were to prevail in the state court action, none of the shares received in connection with the settlement would be returned, and none of the releases that the CA defendants received would be affected. The Wyly Appellants therefore assert that the claims in the state court action will have no effect on the 2003 Settlement, and urge this Court to vacate the injunction.

In response, the Appellees argue that the "in aid of jurisdiction" exception applies because (1) the federal class actions were complex, large-scale proceedings involving years of oversight by the District Court, and (2) the District Court expressly retained exclusive jurisdiction "over the parties and

12

the Settlement Class Members for all matters relating to the [Class] Action." Joint App'x 1: 92 (¶ 14); Both of these contentions are without merit. We have never held that a district court's involvement in complex litigation justifies, without more, issuance of an injunction "in aid of" the court's jurisdiction, and we decline to create such a rule here. Moreover, in the "retention of jurisdiction" cases cited by the Appellees, the injunctions were directed at state court actions where the terms or enforcement of the federal settlement were clearly at issue.[9] Here, by contrast, there is no overlap between the federal and state court claims or defendants, so the case for applying the "in aid of jurisdiction" exception is much weaker.[10]

On these facts, we hold that the limited circumstances in which the injunction of an *in personam* action may be appropriate "in aid of" the court's jurisdiction are not present in this case. We therefore conclude that the "in aid of jurisdiction" exception cannot form the basis for the District Court's injunction of the state court action.

## B. The "Relitigation" Exception

Having determined that the "in aid of jurisdiction" exception is inapplicable, we now turn to the Anti-Injunction Act's so-called "relitigation" exception, which permits a federal court to enjoin a state court proceeding "to protect or effectuate its judgments." 28 U.S.C. § 2283. The relitigation exception, which was "designed to implement 'well-recognized concepts' of claim and issue preclusion," authorizes a federal court to enjoin "state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'" *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011)

---

[9] *See, e.g., In re Am. Honda Motor Co. Inc.*, 315 F.3d 417, 437–38 (4th Cir. 2003); *Winchester v. Fla. Farm Bureau Equities Inc.*, 427 F. App'x 833, 836–37 (11th Cir. 2011); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529 (LMM), 2011 WL 1044156, *1–2 (S.D.N.Y. Mar. 16, 2011).

[10] The Appellees' remaining argument appears to conflate the "in aid of jurisdiction" exception with the "relitigation" exception, which we consider separately below. *See* Appellees' Br. 27 (arguing that the "in aid of jurisdiction" exception should apply because "the claims and issues that the Wyly Appellants seek to adjudicate cannot be separated from the relief previously ordered by Judge Platt" (internal quotation marks omitted)).

13

(quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988)). In applying this exception, the

Supreme Court has "taken special care to keep it 'strict and narrow,'" *id.* (quoting *Chick Kam Choo*, 486

U.S. at 148), because "issuing an injunction under the relitigation exception is resorting to heavy

artillery," *id.* at 2375–76. Indeed, "a court does not usually get to dictate to other courts the preclusion

consequences of its own judgment. Deciding whether and how prior litigation has preclusive effect is

usually the bailiwick of the *second* court"—in this case, the New York state court. *Id.* at 2375 (internal

citation and quotation marks omitted). Thus, "the fact that an injunction *may* issue under the Anti-

Injunction Act does not mean that it *must* issue." *Chick Kam Choo*, 486 U.S. at 151; *see Mitchum v. Foster*,

407 U.S. 225, 243 (1972) (noting that the Anti-Injunction Act does not "qualify in any way the

principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a

state court proceeding").

The preclusive effect of a federal court's judgment issued pursuant to its federal-question

jurisdiction is governed by the federal common law of preclusion. *See Marvel Characters, Inc. v. Simon*,

310 F.3d 280, 286 (2d Cir. 2002) (applying the federal common law of preclusion in a federal-question

case); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("For judgments in federal-question cases

. . . federal courts participate in developing 'uniform federal rule[s]' of res judicata, which this Court has

ultimate authority to determine and declare." (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S.

497, 508 (2001))); 18B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4466; *cf.*

*Bayer Corp.*, 131 S. Ct. at 2376 n.6. As the Supreme Court recently summarized:

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and

resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.* at 748–49. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

*Taylor*, 553 U.S. at 892.

The Appellees do not assert *claim* preclusion*, cf. S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1465 (2d Cir. 1996) (claim preclusion generally does not apply to "a claim that arose after a suit was commenced"), and instead focus their argument on *issue* preclusion, *see* Appellees' Br. 34–36 (arguing that state court suit raises the "same issue" as previously decided).

The Supreme Court has listed the various requirements of issue preclusion on numerous occasions. Without purporting to state a complete test, the Court recently stated "at least two conditions" for a federal court's decision to have preclusive effect: "First, the issue the federal court decided must be the same as the one presented in the state tribunal. And second, [the party to be bound] must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties." *Bayer Corp.*, 131 S. Ct. at 2376 (internal citation omitted); *see Taylor*, 553 U.S. at 892. The latter of these rules preserves the due process restraint against binding a litigant who "has never had an opportunity to be heard." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979). Moreover, issue preclusion requires that the issue was "actually litigated and resolved in a valid court determination essential to the prior judgment." *Taylor*, 553 U.S. at 892 (quotation marks omitted). Our summary of the four requirements for issue preclusion is in harmony with these various Supreme Court statements: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies]

had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters, Inc.*, 310 F.3d at 288–89.

Before applying the elements of issue preclusion to this case, we begin with a preliminary observation about the Appellees' argument. In the course of the federal class action litigation, the District Court did not "actually decide" whether the Appellees committed legal malpractice; that claim was not presented, and therefore the Court had no reason to address malpractice as such. The Appellees' issue-preclusion argument is focused not on whether the District Court previously adjudicated a malpractice *claim*, however, but on whether the Court resolved one of the *elements* of a malpractice claim—namely, counsel's deficient performance. *See AmBase Corp. v. Davis Polk & Wardwell*, 8 N.Y.3d 428, 434 (2007) (a plaintiff alleging malpractice under New York law must show, *inter alia*, that "the defendant attorney failed to exercise the ordinary *reasonable skill* and knowledge commonly possessed by a member of the legal profession . . . ." (emphasis supplied)). If the Appellees can show that issue preclusion prevents a future court from finding this *element* satisfied, then any malpractice claim that would require a finding that counsel's performance was deficient is precluded under federal law. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 337 (1979) (judge-made findings may bind the parties in a subsequent action at law).

We begin by examining the issue raised and decided in the federal class action proceedings—elements one and two of our preclusion analysis. The Settlement Order held, *inter alia*, that the global settlement of the 1998 and 2002 class actions was "fair, reasonable[,] and adequate," and that class counsel was entitled to an award of fees that the District Court found to be "fair and reasonable." Whether an award of "fair and reasonable" attorneys' fees necessarily decides the deficient-performance prong of a legal malpractice claim is an issue of first impression in this Circuit.[11]

---

[11] We previously addressed a substantially similar question in a non-precedential summary order. *Hutton Constr. Co. v. Int'l*

16

We conclude that the deficient-performance prong of New York's legal malpractice rule is identical to the reasonable-performance issue that the District Court decided as a necessary component of the Settlement Order.

Even a cursory review of the allegations in the amended complaint belies the Wyly Appellants' contention that the state court action does not seek to relitigate the District Court's determination that class counsel's representation was reasonable. The amended complaint alleges, *inter alia*, that:

- Class counsel "abandoned their fiduciary duties owed to [the Wyly Appellants] and the other class members" by settling the 2002 Class Action prior to discovery. Joint App'x 2: 426–27 (¶ 5).

- The 2002 Class Action was "jettison[ed]" to obtain a settlement that "yielded pennies for the victimized public shareholders, but over $40 million in attorneys' fees for [class counsel]." Joint App'x 2: 456 (¶ 132).

- The releases given to the CA defendants were overly broad. Joint App'x 2: 448 (¶ 99).

- The attorneys' fees awarded to class counsel constitute unjust enrichment and should be disgorged. Joint App'x 2: 458 (¶¶ 146–48), 467–68 (¶ b).

- Class counsel breached their duty of loyalty to the plaintiff class by refusing to support the Wyly Appellants' Rule 60(b) motion. Joint App'x 2: 450 (¶ 104).

These allegations, which are designed to state a claim that the Appellees "failed to exercise the ordinary *reasonable skill* and knowledge commonly possessed by a member of the legal profession," *AmBase Corp.*, 8 N.Y.3d at 434 (emphasis supplied), constitute a collateral attack on the District Court's findings that the Settlement was "fair, reasonable and adequate," that class counsel was entitled to an award of attorneys' fees, and that those fees were "fair and reasonable." Those findings were possible only if counsel's performance met or exceeded the minimal standards of professional competence—otherwise an award of fees would not have been fair and reasonable in the circumstances. We therefore conclude

---

*Fidelity*, 152 F.3d 918 (2d Cir. 1998) (summary order) ("When the district court endorsed the consent decree it determined

that the state court action seeks to relitigate the same issue that the District Court already resolved. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 336 (2d Cir. 2006) ("In the course of approving those settlements and the resulting fee awards, the court found [counsel's] representation reasonable and adequate . . . .").

The limited case law from other Courts of Appeals on the relitigation exception accords with our conclusion that a district court's finding regarding the adequacy of counsel may have preclusive effect in a future malpractice action. *See, e.g., Thomas v. Powell*, 247 F.3d 260, 264 (D.C. Cir. 2001) (upholding the injunction of class plaintiffs' post-settlement malpractice action because the district court had "squarely decided" that the attorneys acted in the interests of the class); *see also Koehler v. Brody*, 483 F.3d 590, 598 (8th Cir. 2007) (rejecting class plaintiffs' post-settlement malpractice claim because "[i]mplicit within the court's approval [of the settlement] were findings that the case had not settled for an amount that was too low, and that class counsel fairly and adequately protected the interests of the class" (internal citation and quotation marks omitted)); *Laskey v. Int'l Union*, 638 F.2d 954, 957 (6th Cir. 1981) ("Since appellants had the opportunity to object to the legal representation at the prior settlement hearing and since a finding that the class was adequately represented is necessary for finding the settlement was fair and reasonable, which in turn was essential to approving the settlement, appellants are collaterally estopped from now asserting that the legal representation was not adequate and that [class counsel] committed legal malpractice." (internal citation omitted)); *Achtman v. Kirby, McInerney & Squire, LLP*, 404 F. Supp. 2d 540, 545 (S.D.N.Y. 2005) (holding that "[i]f the threatened malpractice litigation against the law firms based on the representation they provided in the underlying action was brought before another court," the court's prior findings "based on the quality of the representation

---

that [counsel] committed no malpractice while representing [the plaintiff].").

18

before this Court would be relitigated and essentially undone by another court").[12]

The Wyly Appellants seek to distinguish the foregoing authority by contesting the third element of issue preclusion—in other words, by arguing that they were deprived of a "full and fair opportunity" to litigate the issue of their counsel's representation. The Appellants point to the fact that, unlike the plaintiffs in the foregoing cases, they were not physically present or represented by separate counsel at the fairness hearing. This argument is unavailing.

"It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co.*, 439 U.S. at 327 n.7. This rule, however, does not prevent preclusive effect from applying to suits by members of a certified class action. *See Bayer Corp.*, 131 S. Ct. at 2380 (noting that "unnamed members of a class action [may] be bound, even though they are not parties to the suit"). There is no dispute that the Wyly Appellants were members of the certified Settlement Class, and were therefore bound by both the Settlement Order and the Rule 60(b) Order. The Wyly Appellants also were fully aware of the date and time of the fairness hearing, and it was their choice not to attend. As members of a certified class, they are bound by the judgment of the District Court. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) ("Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so."). They cannot now, by dint of their decision not to attend the fairness hearing, assume a capacity they would otherwise lack to challenge the outcome of that proceeding.

The Wyly Appellants further contend that the relitigation exception does not apply here because many of the facts and events giving rise to claims alleged in the state court action "were

---

[12] In response to the cases cited above and in the Appellees' brief, the Wyly Appellants muster a single citation to a case that did not involve a class action. *See Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 391 (S.D.N.Y. 2000) (holding that the "[s]pecific allegations" of malpractice at issue were not brought to the court's attention, and therefore were not fully and fairly litigated).

19

unknown, or had not yet occurred, at the time the District Court approved the 2003 Settlement." Appellants' Br. 35. This argument might have more force were it not for the fact that the Wyly Appellants litigated their fraud allegations for nearly three years in connection with their Rule 60(b) motion—and lost. *See Greene v. United States*, 79 F.3d 1348, 1352 (2d Cir. 1996) (noting that issue preclusion may be inappropriate if "'controlling facts or legal principles have changed significantly' since the initial decision" (quoting *Montana v. United States*, 440 U.S. 147, 155 (1979)). In the Rule 60(b) Order, the District Court held that the Wyly Appellants "failed to produce any 'new' evidence of fraud," notwithstanding the "[a]mple opportunity . . . given to the parties to illuminate and bring to th[e] Court's attention any fraud or reasonable basis for a finding of fraud upon th[e] Court." The Court further held that the Wyly Appellants "failed to establish that the contents of the '23 boxes' allegedly withheld during discovery and prior to the settlement warrant granting further discovery and reopening the 2003 settlement." Given that the District Court was fully aware of the pending Government investigation at the time of the fairness hearing, *see* Joint App'x 1: 270 at 5:5–5:10, and that the parties exhaustively litigated further allegations of fraud in connection with the Rule 60(b) motion, we conclude that the relitigation exception applies notwithstanding the alleged subsequent discoveries.

Finally, we note that the District Court's finding regarding class counsel's adequacy was necessary to its judgment accepting the settlement and fees award. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) ("Before approving a class settlement agreement, a district court . . . *must* separately evaluate whether the settlement agreement is 'fair, reasonable, and adequate' under Rule 23(e)." (emphasis supplied)). The fourth element of issue preclusion, requiring "the resolution of the issue [that] was necessary to support a valid and final judgment on the merits," *Marvel Characters, Inc.*, 310 F.3d at 289, is therefore satisfied as well.

In sum, we hold that where, as here, the parties had a full and fair opportunity to litigate the reasonableness of counsel's representation, a district court's award of "fair and reasonable" attorneys' fees precludes a subsequent action for legal malpractice for counsel's advocating the settlement. We conclude that the District Court's decision to issue an injunction in these circumstances was "within the range of permissible decisions" and therefore was not an abuse of its discretion. *Sims*, 534 F.3d at 132 (quotation marks omitted).

We note that the traditional "principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding" support this result. *Mitchum*, 407 U.S. at 243. Prior to filing their malpractice suit, Appellants had already filed a Rule 60(b) motion, and the District Court ultimately concluded that in three years of litigation, they "failed to produce any 'new' evidence of fraud" or any other valid reason to reopen the case. The Court therefore had legitimate concerns that the Appellants' malpractice action in state court might simply be an end-run around its prior decisions. *See Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 760–61 (2d Cir. 1986) (courts enjoy wider discretion to enjoin litigation when the enjoined party may be abusing the court system); *In re Martin-Trigona*, 737 F.2d 1254, 1261–62 (2d Cir. 1984) (same). The District Court's decision finds further support in a justified fear that allowing malpractice suits in state court against these Appellees might "unleash such suits upon class counsel in fora far and wide" and thereby undermine the class action system as a whole. *Achtman*, 404 F. Supp. 2d at 546. Moreover, complex class action suits present relatively unusual circumstances with respect to comity toward state courts, since the risk of vexatious litigation by dissatisfied litigants is higher, and since the federal court is often in a better position to quickly appraise the merits of a preclusion argument regarding a complex suit that it has already adjudicated. *See Browning Debenture Holders' Committee v. DASA Corp.*, 605 F.2d 35, 40 (2d Cir. 1978) ("While comity requires respect for the ability of the state courts to decide the issue of res

judicata properly, it also requires sympathy for their calendar problems and for the task that would confront them were this litigation to be imposed upon them." (quotation marks omitted)).

In light of the preclusive effect of the District Court's award of "fair and reasonable" attorneys' fees, as well as the foregoing equitable considerations, we affirm the judgment of the District Court.

## CONCLUSION

To summarize, we hold that:

(1)     The "in aid of jurisdiction" exception to the Anti-Injunction Act, 28 U.S.C. § 2283, cannot form the basis for the District Court's injunction of the state court action, since the limited circumstances in which the injunction of an *in personam* action may be appropriate "in aid of" the court's jurisdiction are not present in this case.

(2)     The District Court's injunction of the state court action was proper under the "relitigation" exception to the Anti-Injunction Act, since the award of "fair and reasonable" attorneys' fees in the class action precludes a subsequent malpractice action where, as here, the parties had a full and fair opportunity to litigate the reasonableness of counsel's representation.